[Cite as *Woods v. Lukan*, 2026-Ohio-3022.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

NATALIE WOODS,                                   :

    Plaintiff-Appellee,                          :

                                       No. 115776

    v.                                                       :

ADETOKUNBO MICHAEL LUKAN,          :

    Defendant-Appellant.                       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 6, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-21-387095

---

### *Appearances:*

Stafford Cruz Law Company and Kelley R. Tauring, *for appellee.*

Cordell │ Cordell and Danielle C. Kulik, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant Adetokunbo Michael Lukan ("Lukan") appeals the domestic court's judgment declining to find his former spouse, plaintiff-appellee Natalie Woods ("Woods") in contempt of court. He raises the following single assignment of error for review:

The trial court erred finding [Woods] was under no court order to divide the cash accounts in half and divide the retirement accounts in half as ordered by the decree.

{¶ 2} For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 3} At issue in this case is whether Woods violated the parties' separation agreement, which was incorporated into the parties' judgment entry of divorce issued in November 2022. In Article III of the separation agreement, the parties listed the pension/retirement accounts and bank/financial accounts acquired by each of them during the marriage. The separation agreement listed the current balance, premarital balance, and marital portion for each account. The parties agreed to factor out the premarital portion of each account, split the marital portion 50/50 after the application of the marital debt offset, employ QDRO Group to carryout the intent of the parties related to allocation of the accounts, and split QDRO Group's fee 50/50.

{¶ 4} The specific terms regarding the parties' pension/retirement accounts are set forth in Sections 3.03-3.04, which provide:

3.03 The parties agree to factor out "premarital component" of each pension/retirement benefit set forth above. The parties agree to split the "marital portion" 50/50 after application of "marital debt offset" as explained in Article IV, Section 4.01 of the parties' Separation Agreement.

3.04 The parties agree to employ the services of QDRO Group, Medina, Ohio to carry out the intent of the parties related to allocation of Pension/Retirement benefits/Bank and Financial accounts. The parties agree to split any and all fees/cost to QDRO Group, Medina, Ohio for their services 50/50.

(Separation Agreement, p. 3.)

{¶ 5} The terms of the parties' bank/financial accounts are set forth in Sections 3.06 and mirror the language of Section 3.03:

> 3.06 The parties agree to factor out "premarital component" of each bank account/financial account set forth above. The parties agree to split the "marital portion" 50/50 after application of "marital debt offset" as explained in Article IV, Section 4.01 of the parties' Separation Agreement.

(Separation Agreement, p. 4.) Article IV, Section 4.01 of the separation agreement stated that the total amount of the parties' outstanding marital debt was $19,249.00. The parties agreed that this sum would be offset against their "Pension/Retirement benefits and/or parties' Bank/Financial Accounts." (Separation Agreement, p. 6.)

{¶ 6} The parties first returned to court regarding the division of property in February 2023, when both parties filed show cause motions. In Lukan's motion, he alleged that his attorney sent an email to Woods's attorney requesting to be included on communications with QDRO Group and that he had no information regarding the qualified domestic relations orders or "QDROs." In Woods's motion, she alleged that Lukan had not paid his 50 percent share to QDRO Group for the services they provided. According to the magistrate, both parties orally withdrew their motions to show cause in October 2023, which was prior to the commencement of trial on these motions. In November 2023, Lukan filed another show cause motion, alleging that Woods did not pay her share of the costs for the preparation of the QDROs. This motion was dismissed in October 2024.

**{¶ 7}** Then in January 2025, Lukan filed his third show cause motion, which is the basis of this appeal, alleging that Woods violated their divorce decree and the court's orders by (1) refusing to cooperate with QDRO Group and instead insisting the cash accounts be balanced against the retirement accounts; and (2) refusing to pay him $52,332.06, which represents his marital portion of cash accounts after the application of marital debt offset.[1] In addition to the contempt of court finding, Lukan requested attorney fees for the "preparation and prosecution" of this motion. (Lukan's Motion to Show Cause, Jan. 21, 2025.)

**{¶ 8}** The matter proceeded to a trial before the magistrate, at which both parties presented evidence. Following the conclusion of trial, the magistrate issued a decision, declining to find Woods in contempt. The magistrate found that QDRO Group performed an offset calculation by adding the marital portion of all the bank/financial accounts with positive balances and determined that to equalize these accounts, Woods would need to pay Lukan $52,332.06, after she paid the $19,249.00 marital debt from the financial accounts. QDRO Group also determined that for the pension/retirement accounts, Lukan would need to pay Woods $54,482.31 to equalize the marital portion of these accounts. Because the amounts owed were so close, QDRO Group recommended to offset both payments and have Lukan pay Woods $2,150 ($54,482-$52,332=$2,150) to equalize the marital portion valued in the separation agreement. In making this recommendation,

---

[1] We note that the parties are currently represented by different counsel in this post-decree proceedings than counsel at the time of the divorce.

QDRO Group noted that the parties would forego gains/losses, but they would not incur additional expenses to prepare the QDROs and administration fees from the plans. The magistrate explained:

> As of the date of the hearing the pension plans that the parties have were not divided . . . . [Lukan] believes that the intent of the parties was to equally divide the marital portion of the cash that the parties had at the time of the divorce. As of the date of the hearing the marital portion of the cash accounts have not been divided. [Lukan] believes that neither the pension/retirement accounts nor the cash accounts have been divided because [Woods] seeks to offset the retirement accounts with the cash accounts.
>
> [Lukan] acknowledged during his testimony that nowhere in the Judgment Entry of Divorce or the Separation Agreement is [Woods] ordered to pay [Lukan] any sum of money. He further acknowledged that nowhere in the Judgment Entry of Divorce or the Separation Agreement is [Woods] specifically ordered to divide the marital portion of the pension/retirement accounts.
>
> . . .
>
> [Woods] paid the marital debt that was to be offset with the pension/retirement accounts and the financial accounts. . . . [Woods] believed that the parties were to total up all the accounts and divide them in the most cost effective manner. She believed that QDRO Group was to give the parties a recommendation and they would follow the most cost effective recommendation. [Woods's] former counsel retained QDRO Group and [Woods] paid $500.00 for the services of QDRO Group. [Woods] believes that she fulfilled her obligations to employ QDRO Group.
>
> The evidence presented was that [Woods] requested [Lukan] pay her $2,150.20.
>
> . . .
>
> The Magistrate finds that the Judgment Entry of Divorce and Separation Agreement are silent as to what the parties were going to do if they did not agree with the assessment of QDRO Group.

The Magistrate finds that [Lukan] is seeking a finding of contempt against [Woods] for not dividing the financial accounts and failing to pay her share of the fees to QDRO Group to prepare the QDRO[s] to divide the pension/retirement accounts.

. . .

The Magistrate finds that the parties agreed to divide the marital portion of their pension/retirement accounts and bank/financial accounts 50/50 and offset the marital debt from those accounts. The Magistrate finds that the parties agreed to retain QDRO Group to carry out the intent of the parties relative to their pension/retirement accounts, bank/financial accounts and marital debt. The Magistrate finds that [Woods] did retain QDRO Group to carry out the intent of the parties relative to the marital portion of their pension/retirement and bank/financial accounts.

The Magistrate finds that nowhere in the Judgment Entry of Divorce is [Woods] ordered to pay to [Lukan] one half of the marital portion of the bank/financial accounts. The parties agreed "The parties agree to split the 'marital portion' 50/50 after the application of 'marital debt offset . . .'" The Magistrate finds that at the time the parties entered into the Separation Agreement all the information was present in the Separation Agreement to determine the marital portion of all the bank/financial accounts, offset the marital debt and determine the amount one party would have to pay the other to divide the accounts 50/50. The Magistrate finds that the Separation Agreement does not determine which party needed to pay the other to equalize the bank/financial accounts. Therefore, the Magistrate finds that there is no court order that orders [Woods] to pay [Lukan] a sum certain to equalize the marital portion of the bank/financial accounts. The Magistrate therefore finds that [Woods] cannot be found in contempt for failing to pay [Lukan] 50% of the marital portion of the funds in the bank/financial accounts.

The Magistrate finds that the parties agreed to divide the marital portion of the [pension/retirement] benefits 50/50 after the premarital components of the accounts were factored out. Again, all the information was present in the Separation Agreement to determine the martial portion of the pension/retirement accounts Again, the Separation Agreement does not set forth the total marital portion of the [pension/retirement] accounts. The Magistrate finds that the parties agreed to split the marital portion of the pension retirement accounts 50/ 50. The Magistrate finds that QDRO Group provided to the parties

that to divide the marital portion of the retirement accounts [Lukan] would need to pay [Woods] $54,482.31 to equalize the marital portion of their retirement accounts.

The Magistrate finds that QDRO Group provided the parties the information necessary to carry out the terms of their Separation Agreement to divide the 'marital portion' of the bank/financial accounts and to divide the marital portion of the [pension/retirement] accounts. To date the parties have not effectuated the terms of their Separation Agreement.

(Magistrate's Decision, Aug. 25, 2025.)[2]

{¶ 9} Following the magistrate's decision, Lukan filed objections, arguing that the magistrate erred (1) in finding that "there is no court order that orders [Woods] to pay [him] a sum certain to equalize the marital portion of the bank/financial accounts"; (2) by not finding Woods in contempt for failing to prepare the QDROs; (3) by not finding Woods in contempt for failing to split the parties' cash accounts 50/50; and (4) in not enforcing the plain terms and spirit of the parties' separation agreement.

{¶ 10} While Lukan filed objections, he never timely supplemented his objections with a transcript of the proceedings. Woods filed a motion to dismiss the objections because Lukan did not request a transcript within the 14 days set forth in the local rules. The domestic relations court denied Woods's motion to dismiss and found that Lukan did not timely request a transcript. The court further found that it would review Lukan's objections as a matter of law because of the lack of transcript. Two days later, the court issued a judgment entry overruling Woods's

---

[2] Because there was no finding of contempt, the magistrate also found that there was no basis to award Lukan attorney fees.

objections and adopting the magistrate's decision denying Lukan's show cause motion. In this journal entry, the court reiterated that it "'must accept the magistrate's findings and limit its review to the magistrate's legal conclusions'" because of Lukan's failure to file a transcript. (Judgment Entry, Oct. 16, 2025), quoting *Fritz v. Fritz*, 2013-Ohio-2536, ¶ 4 (8th Dist.). After thoroughly reviewing the relevant sections of the separation agreement and the magistrate's decision, the court stated:

> The Judgment Entry of Divorce and Separation Agreement does not order either party to pay the other to effectuate the division of property. [Lukan] argues that the Magistrate erred in the finding that there was no court order requesting [Woods] to pay [Lukan] a certain sum. However, at trial, [Lukan] acknowledged there was no order saying there was an obligation. It appears that the parties agreed to total the retirement benefits and financial accounts, offset them by the marital debts, and divide any remaining funds equally.
>
> The parties were unable to agree on the terms of the QDRO, therefore, [Woods] is unable to prepare the necessary QDROs. [Lukan] has failed to present such an order to support his claim. There is no existing order that requires [Woods] to pay [Lukan].
>
> . . .
>
> The parties agreed in their Judgment Entry of Divorce and Separation Agreement to offset their retirement accounts, financial accounts and debts. At trial, the parties acknowledged there was no obligation for [Woods] to pay [Lukan].
>
> The terms of the parties' Judgment Entry of Divorce and Separation Agreement are clear. The Court finds that the Magistrate properly reviewed the terms of the agreements. The only obligation in the agreement is to employ the services of QDRO Group to carry out the intent of the parties relating to the allocation of retirement accounts, bank accounts and debt. [Woods] did that and retained their services. However, the parties did not agree on their recommendation and there are no further obligations.

Therefore, [Lukan's] Objections are overruled.

The Court has reviewed the August 25, 2025, Magistrate's Decision in its entirety and fails to find any errors of law on the face of the decision.

(Judgment Entry, Oct. 16, 2025.)

{¶ 11} It is from this order that Lukan now appeals, raising one assignment of error for review.

## II. Law and Analysis

{¶ 12} Lukan argues the domestic relations court abused its discretion when it declined to find Woods in contempt of court for violations of the separation agreement. He contends the separation agreement did not provide that the post-tax cash accounts could offset the pre-tax retirement accounts, but did allow an offset to pay off the marital debts. As a result, he maintains that Woods should pay him $52,332.06 in cash to equalize the bank/financial accounts.

{¶ 13} We begin our analysis, like the domestic relations court did, by noting that Lukan failed to make the trial transcript part of the record for the court's review of the magistrate's decision and for our review. Woods argues that we should reject Lukan's assignment of error because of this failure and because he failed to argue plain error. Lukan counters that the transcripts were not necessary for review because he cited to the facts in the magistrate's decision and the domestic relations court's review is limited to the magistrate's conclusions of law. Lukan contends that under these circumstances, the appropriate standard of review is "abuse-of-discretion." We agree with Lukan that we review the domestic relations court's decision under the abuse of discretion standard.

{¶ 14} As this court has previously stated, when a party objects to a magistrate's decision and fails to timely file a transcript or affidavit as required by Civ.R. 53(D)(3)(b)(iii), the "trial court must accept the magistrate's *findings of fact* and limit its review to the magistrate's *legal conclusions*." (Emphasis added.) *Fritz*, 2013-Ohio-2536, at ¶ 2, 4 (8th Dist.), citing *Bailey v. Bailey*, 2012-Ohio-5073 (8th Dist.), citing *Snider v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1665 (10th Dist.); *see also Vannucci v. Schneider*, 2017-Ohio-192 (8th Dist.). As a result, "[o]n appeal, our review is limited to determining whether the trial court abused its discretion in accepting and adopting the magistrate's decision." *Id.* at ¶ 5, citing *Dancy v. Dancy*, 2004-Ohio-470, ¶ 10 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 15} According to Lukan, under the separation agreement, the bank/financial accounts were classified as a separate marital asset than the pension/retirement accounts and if he and Woods "desired to offset pre-tax retirement funds against post-tax cash accounts, they could have stated such intent within the terms of the Separation Agreement. But they did not[.]" (Appellant's brief, p. 11.) His reason for this interpretation is based on the difference between the funds held in cash accounts and the funds held in retirement accounts. Lukan contends that "[t]he funds held in cash accounts are immediately available to the parties. The funds held in retirement have restrictions on their accessibility linked to the age of the parties and if used early are subject to incurring federal tax

penalties. The funds in cash accounts have already been taxed. The funds held in the retirement accounts have not been taxed and will incur federal and state income taxes when withdrawn from the accounts." (Appellant's brief, p. 11.) Thus, Lukan argues that Woods should have been held in contempt for failing to effectuate the terms of the separation agreement and divide these two marital assets equally.

{¶ 16} It is well established that contempt is "'disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *In re K.B.*, 2012-Ohio-5507, ¶ 10 (8th Dist.), quoting *Windham Bank v. Tomaszczyk,* 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. To establish a contempt finding, "the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order." *Id*. at ¶ 11, citing *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 295 (10th Dist. 1990); *Pendergraft v. Watts*, 2011-Ohio-5649 (8th Dist.).

{¶ 17} In this case, we decline to find that the domestic relations court abused its discretion in overruling Lukan's objections and adopting the magistrate's decision. The magistrate's decision extensively recited the relevant trial testimony and analyzed the proper legal standard used to determine contempt. Without a transcript of the proceedings, we must accept the domestic relations court's factual findings, and we find that the appropriate rules of law were applied to those findings. The domestic relations court had sufficient basis upon which to analyze the issues

and to apply appropriate rules of law in reaching its decision to adopt the magistrate's decision. *See Fritz* at ¶ 16; *Dancy* at ¶ 12.

{¶ 18} As the record demonstrates, the only obligation in the separation agreement was for the parties to employ QDRO Group to carry out the intent of the parties relating to the allocation of retirement accounts, bank accounts, and debt. Woods complied with that obligation. The parties, however, did not agree on QDRO Group's recommendation. There are no further obligations in separation agreement requiring Woods to pay Lukan a certain sum to equalize the marital portion of the bank/financial accounts — a fact that both parties acknowledged at trial. As a result, the domestic relations court properly concluded that Woods could not be found in contempt for failing to pay Lukan 50 percent of the marital portion of the funds in the bank/financial accounts.

{¶ 19} Accordingly, the sole assignment of error is overruled.

{¶ 20} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
DEENA R. CALABRESE, J., CONCUR